**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID HOLLOWAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV. ACT. NO. 1:25-cv-460-TFM-M** |
| | ) | |
| **OFFICER NEWMAN BRAZIER , *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are *Defendant Harwell's Motion to Dismiss and Incorporated Memorandum in Support* (Doc. 30, filed 4/3/26) and *The Town's Motion to Dismiss and Incorporated Memorandum of Law* (Doc. 31, filed 4/3/26) in which Defendants Officer Seth Harwell and the Town of Mt. Vernon, Alabama motion the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the claims that are brought against them in Plaintiff David Holloway's Second Amended Complaint. Having considered the motions, responses (Docs. 33, 34), replies (Docs. 35, 36), and relevant law, the Court finds the motions are due to be **DENIED**.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims in this matter occurred in this judicial district.

No party contests jurisdiction or venue, and the Court finds adequate support for both.

## II. BACKGROUND

### A. Procedural Background

On November 13, 2024, Plaintiff David Holloway ("Plaintiff") filed his original complaint with this Court, in which he brought a claim for excessive force under 42 U.S.C. § 1983 against Officer Newman Brazier ("Brazier"). Doc. 1. On January 27, 2026, Plaintiff filed a motion to amend his complaint, which the Court granted. Docs. 9, 10. In his amended complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 against Brazier, Officer Seth Harwell ("Harwell") and the Town of Mt. Vernon, Alabama (the "Town") (Harwell and the Town collectively, "Appearing Defendants"). Doc. 11. The Town filed a motion to dismiss, and Harwell filed a motion for a more definite statement. *See* docs. 21, 22. On March 6, 2026, Plaintiff filed a second motion to amend his complaint, which the Court granted. Docs. 24, 28.

On March 23, 2026, Plaintiff filed his second amended complaint, which is now the operative complaint. *See* Doc. 29. In his second amended complaint, Plaintiff asserts a claim for excessive force under 42 U.S.C. § 1983 against Brazier, a claim for failure to intervene under 42 U.S.C. § 1983 against Harwell, a claim for unconstitutional conditions of confinement under the Fourteenth Amendment which does not state which party it is brought against, and a claim for *Monell* liability against the Town. *See id.* The Town and Harwell filed the instant motions to dismiss. Docs. 30, 31. Plaintiff timely filed responses and Appearing Defendants timely filed replies. Docs. 33, 34, 35, 36. Brazier has not yet appeared in this action, though his deadline for filing a responsive pleading has passed.[1]

---

[1] The Clerk entered default as to Brazier and Plaintiff filed a motion for default judgment against him. *See* Docs. 26, 27. The Court denied the motion for default judgment with leave to refile after the resolution of the claims against the Appearing Defendants to avoid potential inconsistent judgments. *See* Doc. 39.

The motions to dismiss are ripe for review, and the Court finds oral argument unnecessary.

## B. Factual Background[2]

At all times relevant to the events of this action, Brazier and Harwell were police officers employed by the Town. Doc. 29 at 1-2. The Town is a municipality responsible for polices governing its police department. *Id.* at 2.

On May 10, 2025, Plaintiff states he was detained by Brazier and was not resisting arrest and did not pose a threat to officer safety. *Id.* Plaintiff was leaning against a patrol vehicle when Brazier deployed a taser into his abdomen. *Id.* Harwell was present and observed the use of force. *Id.* Plaintiff was then transported to the Mt. Vernon jail. While Plaintiff was handcuffed inside a jail cell, restrained and not resisting, Brazer sprayed Plaintiff in the face with pepper spray. *Id.* Brazier then dragged Plaintiff across the floor in shackles. Harwell was present and did not stop Brazier. *Id.* As a result, Plaintiff alleges that he suffered physical pain, breathing difficulty, eye injuries, humiliation, and emotional distress. *Id.*

Plaintiff asserts that prior to being hired by the Town, Brazier worked for the Mobile Police Department where he received disciplinary action. *Id.* at 3. He further asserts that the Town was aware of the disciplinary problems and hired Brazier despite these red flags. *Id.* He further asserts that the Town failed to adequately train officers regarding taser use, pepper spray use, use of force against restrained detainees, and the duty to intervene. *Id.* Additionally, Plaintiff asserts that prior

---

[2] The facts presented in the "Factual Background" section of this Memorandum Opinion and Order are based on the factual allegations that are contained in the second amended complaint (Doc. 29), which the Court must assume are true for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), *see, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *see also Cottone v. Jenne*, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be the actual facts.").

to the incident, Brazier had already used a taser on another non-resisting arrestee earlier in 2025 and the Town failed to take corrective action, and generally failed to discipline officers who used excessive force. *Id.* at 3-4. Plaintiff asserts that Harwell had the time and ability to intervene and deliberately chose not to do so. *Id.* at 5.

## III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a Fed. R. Civ. P. 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of the motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., Gaubert*, 499 U.S. at 327; *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, all factual allegations shall be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss.

*Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012)[3] (citing, among other cases, *Lawrence,* 919 F.2d at 1529, for the proposition that, under Fed. R. Civ. P. 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss). "When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto." *Thaeter v. Palm Beach Cnty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for [Fed. R. Civ. P.] 12(b)(6) purposes.").

## IV. DISCUSSION AND ANALYSIS

### A. Harwell's Motion to Dismiss

Harwell alleges that Plaintiff's claim against him is due to be dismissed because Plaintiff has failed to properly allege failure to intervene, and because he is entitled to qualified immunity. Doc. 30 at 2-3. Plaintiff counters that he adequately pleads a failure to intervene claim against Harwell. Plaintiff further counters that Harwell is not entitled to qualified immunity because the second amended complaint plausibly alleges a constitutional violation and because the right to be free from excessive force and the officer's duty to intervene are clearly established.

#### i. Failure to State a Claim

First, Harwell argues that the failure to intervene claim is conclusory and fails to provide

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

sufficient facts to plausibly plead the claim. Doc. 30 at 3-4. Harwell further asserts that Plaintiff does not allege the elements of a failure to intervene claim. *Id.* at 4. Specifically, Harwell argues that Plaintiff does not allege facts showing that Harwell knew the force was excessive or that the unlawfulness of the force was obvious, nor does Plaintiff include any factual allegations supporting that Harwell was in a position to intervene. *Id.* at 5.

The Eleventh Circuit has held that an officer can be liable for failing to intervene when another officer uses excessive force "when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924-25 (11th Cir. 2000) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998); *see also Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996) (noting that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.").

Here, Plaintiff alleges that Brazier tased him in the abdomen during his arrest when he was not resisting, and that Brazier pepper sprayed him inside a jail cell and then dragged him across the jail floor. Plaintiff further alleges that Harwell was present for and observed Brazier's actions, and that Harwell had the time and ability to intervene but deliberately chose not to do so. Doc. 29 at 5. It seems obvious to the Court that tasing and pepper spraying a detainee who is not resisting is excessive. While the facts alleged are not extremely detailed, they are sufficient at this stage to plausibly allege a failure to intervene claim. Plaintiff is not required to plead his claims with particularity, as this is not a claim identified under Fed. R. Civ. P. 9. Accordingly, Harwell's motion to dismiss is due to be denied on this ground.

**ii. Qualified Immunity**

Harwell further argues that Plaintiff's claim against him is due to be dismissed because he

is entitled to qualified immunity. Specifically, Harwell argues that he was acting within the scope of his discretionary authority as a police officer during and subsequent to Plaintiff's arrest, and he did not violate Plaintiff's clearly established Constitutional rights.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be protected by qualified immunity, the government official must first demonstrate that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (citing *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). "Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Garcia*, 75 F.4th at 1185 (quotation omitted).

An officer acts within his discretionary authority when his behavior is "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Harbert Int'l*, 157 F.3d at 1282); *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). "Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an

unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting *Holloman*, 370 F.3d at 1266). Therefore, an officer may still be acting within his discretionary authority even if/when violating the constitution. The relevant analysis is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations and internal quotations omitted).

Courts utilize a two-part framework to evaluate whether qualified immunity applies to a claim. *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). The first element is whether the plaintiff's allegations, if true, establish a constitutional violation. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second element is whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. at 232. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Garcia*, 75 F.4th at 1185 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, (2011)). This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U. S. 335, 341 (1986). As to the second prong of the analysis, courts "recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir.

2007). Courts will also look beyond caselaw to whether the case at hand is one of "obvious clarity" – i.e., where the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law" on point. *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)). In such situations where it is so obvious, courts have repeatedly held that the constitutional violation is clearly established even though there is no decision in a "materially similar preexisting case." *Cantu*, 974 F.3d at 1235 (citations and internal quotations omitted). That said, "the clearly established law standard is a demanding one." *Id*. (citing *Wesby*, 583 U.S. at 63; *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600 (2015)).

The first inquiry may be a mixed question of law or fact, but the second inquiry is purely a question of law. *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (generally citing *Pearson*, 555 U.S. 223). If a plaintiff fails to establish either one, then the defendant is entitled to qualified immunity.

It is undisputed that Harwell was acting within his discretionary authority as a police officer during and subsequent to Plaintiff's arrest. The Court thus turns to whether Plaintiff's allegations, if true, amount to a Constitutional violation and whether the Constitutional right at issue was clearly established at the time of the defendant's alleged misconduct.

Individuals have a constitutional right to be free from excessive force. "Claims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). "An officer who is present at the scene

and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293-94 (11th Cir. 2009) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)). "However, 'it must also be true that the non-intervening officer was in a position to intervene yet failed to do so.'" *Id.* at 1294 (quoting *Hadley*, 526 at 1330). "One method of intervention is by verbally commanding or directing the other officer to stop using the force that is excessive." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1362 (11th Cir. 2024) (citing *Priester v. City of Rivera Beach*, 208 F.3d 919, 923-28 (11th Cir. 2000)).

Here, Plaintiff alleges that Brazier used excessive force when he deployed a taser into Plaintiff's abdomen during Plaintiff's arrest when Plaintiff was not resisting, and then later pepper sprayed Plaintiff and dragged him across the floor when he was already detained in a jail cell and, again, not resisting. Given the facts, as alleged by Plaintiff, it is not objectively reasonable to deploy a taser or pepper spray an individual who is already detained and not resisting arrest. Plaintiff further alleges that Harwell stood by while Brazier used excessive force and did not intervene, despite the time and ability to do so. Plaintiff has therefore sufficiently pled a Constitutional violation, which was clearly established at the time of the incident. At this stage, under the motion to dismiss standard there is no evidence which can be considered and the Court must accept the allegations as true.

Accordingly, Harwell's motion to dismiss on the grounds of qualified immunity is due to be denied.

**B. The Town's Motion to Dismiss**

The Town argues that the *Monell* claim against it is due to be dismissed because Plaintiff fails to state a claim for *Monell* liability. Doc. 31 at 4. Specifically, the Town argues Plaintiff has

not plausibly alleged the Town has a widespread policy or custom that was the moving force behind Plaintiff's injuries. *Id.*

Under 42 U.S.C. § 1983, "a municipality may be held liable for the actions of a police officer only when the municipal 'official policy' causes a constitutional violation;" a municipality cannot be held liable on a theory of respondeat superior liability. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Therefore, a municipality can only be held liable under § 1983 for constitutional injuries inflicted by its employees "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). When bringing a *Monell* claim, a plaintiff may establish a municipality's policy caused a constitutional injury by identifying either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

The Town argues that Plaintiff has not plausibly alleges that it had a widespread policy or custom that was the moving force behind his alleged injuries. Plaintiff counters that he has sufficiently pled a Monell violation because he has plausibly plead allegations regarding a deficient hiring policy, failure to train and supervise, and failure to discipline. The factual allegations Plaintiff asserts support his claim include:

- <u>Failure to Properly Screen and Hire Officers</u>: "The Town hired officers despite known disciplinary problems with other departments." Doc. 29 at 3. "Defendant Brazier previously received disciplinary action while employed with the Mobile Police Department and had prior arrests and documented misconduct before his employment with the Town." *Id.* "The Town hired Brazier despite these red flags." *Id.* "Reasonable background

investigation would have revealed a high risk that Brazier would violate constitutional rights." *Id.*

- Failure to Train Officers on Use of Force: The Town failed to adequately train officers regarding taser use, pepper spray use, use of force against restrained detainees, and duty to intervene, and these training deficiencies created an obvious risk of constitutional violations. *Id.*
- Pattern of Excessive Force: "Prior to Plaintiff's incident, Brazier had already used a Taser on another non-resisting arrestee earlier in 2025" and "[t]he Town knew or should have known of this incident." *Id.*
- Failure to Discipline: "The Town routinely failed to discipline officers who used excessive force." *Id.* at 4. "This practice created an environment in which officers believed they could violate citizens' rights without consequence. *Id.*
- Deliberate Indifference: "The Town's policymakers were deliberately indifferent to the constitutional rights of its citizens." *Id.* "The Town knew that failure to supervise and discipline officers would likely result in excessive force." *Id.* "Despite this knowledge, the Town failed to take corrective action." *Id.*

Plaintiff further alleges that the Town's policies and customs were the moving force behind his injuries. *Id.* Given these allegations, Plaintiff has plausibly pled that that, at the very least, the Town's hiring, training, and disciplinary policies were the cause of Plaintiff's constitutional injury. Plaintiff should at least be permitted to obtain discovery to obtain further insight into the polices at work. Accordingly, the Town's motion to dismiss is due to be denied.

## V. CONCLUSION

Based on the above, it is hereby **ORDERED** that the motions to dismiss (Docs. 30 and 31) are due to be **DENIED**.

**DONE** and **ORDERED** this 21st day of October 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE